**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NGUYEN VU, | : | |
| THANH THI NGUYEN, | : | |
| | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 10-0953 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**Tucker, J.**                                                                                    **April ___, 2012**

   Presently before this Court are three (3) Motions to Dismiss filed on behalf of Defendant

Qadriyyah Taylor (Doc. 7.); Defendants Judge Sandy L. V. Byrd, Senior Judge Alfred J. DiBona,

Jr., Judge John T.J. Kelly, Judge Stephen J. McEwan, Jr., Judge John L. Musmanno, President

Judge Pamela Pryor Dembe, (collectively, "Judicial Defendants") and Karen Reid Bramblett,

Esquire, Janet M. Fasy, Paul J. Killion, Esquire, Charles E. O'Connor, Jr., Esquire, Donna M.

Snyder, Esquire, and John Doe (Doc. 9.); and Defendants Philadelphia District Attorney R. Seth

Williams ("DA Williams"), former Philadelphia District Attorney Lynne Abraham ("DA

Abraham"), former Assistant District Attorney Robert Lynch ("ADA Lynch"), former Assistant

District Attorney Charlie Ehrlich ("ADA Ehrlich"), Assistant District Attorney Matthew

Connelly ("ADA Connelly"), Assistant District Attorney Erica Wilson ("ADA Wilson"),

Assistant District Attorney Christine Wechsler ("ADA Wechsler"), Assistant District Attorney

Joan Weiner ("ADA Weiner"), and Assistant District Attorney Hugh Burns ("ADA Burns") (collectively, "DA Defendants"). (Doc. 10.)

Plaintiff Nguyen Vu, an inmate at the State Correctional Institute at Greene, filed this matter, *pro se*, on behalf of himself and his aunt, Plaintiff Thanh Thi Nguyen, alleging civil rights violations under 42 U.S.C. § 1983. Plaintiff Vu's claims arise from the arrest, prosecution, conviction, and appeal initiated against him in the Court of Common Pleas for events that occurred on December 7, 2006. (Compl. ¶¶ 34-46.)

After being granted a number of extensions in which to file a response to Defendants' Motions to Dismiss, Plaintiff failed to timely respond to Defendants' motions. Under Local Rule 7.1(c), "In the absence of [a] timely response [to a motion], the motion may be granted as uncontested . . . . ." Therefore, pursuant to Local Rule 7.1, the court may grant Defendants' motions as unopposed. Upon careful consideration of the parties' submissions and for the reasons set forth below, this Court will grant all Defendants' Motions to Dismiss.

## I.   BACKGROUND

*Pro se* Plaintiff Nguyen Vu, on behalf of himself and his aunt, Thanh Thi Nguyen, bring the instant civil rights action, pursuant to 42 U.S.C. § 1983, alleging a conspiracy by Defendants to deny Plaintiff Vu equal protection and due process during his criminal trial and appeal, which he alleges resulted in substantial loss of property, financial hardship, intentional infliction of emotional distress, and injury to his reputation through slander and libel. (Compl. ¶¶ 99, 101-103, 105.) Plaintiffs also allege that Defendants conspired to intentionally inflict emotional distress on Plaintiff Thanh Thi Nguyen by colluding to imprison her loved one to deprive her of her "critical supports." (Compl. ¶¶ 100, 104.) As such, Plaintiffs seek declaratory relief, as well as compensatory and punitive damages and attorney's fees. (Compl. ¶¶ 106-13.)

### A.   UNDISPUTED FACTS & PROCEDURAL HISTORY

From the evidence of record, taken in the light most favorable to the Plaintiffs, the pertinent facts are as follows. On March 6, 2007, Plaintiff Vu was arrested and charged for a

December 7, 2006, incident involving Defendant Jason John Kegel ("Underlying Incident"), for which Plaintiff Vu was charged with aggravated assault, recklessly endangering another person, and possessing an instrument of crime. (Compl. ¶¶ 35, 46; Doc. 7 at 3; Doc. 10 at 8.) On March 7, 2008, Plaintiff Vu was convicted in the Court of Common Pleas for aggravated assault, criminal mischief, possessing an instrument of crime, simple assault, recklessly endangering another person, and reckless driving. Plaintiff Vu's sentence was deferred so that a presentence report and mental health evaluation could be conducted. Thereafter, the Philadelphia District Attorney's Office ("DA's Office") gave Plaintiff Vu notice that it would be seeking to impose a mandatory minimum sentence. (Doc. 10 at 9.)

On April 24, 2008, Plaintiff Vu was sentenced to the mandatory minimum sentence, an aggregate of ten (10) to twenty (20) years incarceration in a state correctional facility. After Plaintiff's Vu's post-sentence motions were denied, on August 8, 2008, Plaintiff Vu filed a notice of appeal from the April 24, 2008, judgment and sentence. (Doc. 10 at 9.) The trial court directed Plaintiff Vu to file a Statement of Matters Complained of on Appeal, which Plaintiff filed on August 21, 2008. In reviewing Plaintiff Vu's appeal, the Court of Common Pleas and Superior Court of Pennsylvania each affirmed the judgment of sentence against him.  See Commonwealth v. Nguyen Vu, Court of Common Pleas, Philadelphia County, Criminal Trial Division, CP-51-CR-0009321-2007 (Mar. 6, 2009); Commonwealth v. Nguyen Vu, Pa. Super. Ct., 2307 EDA 2008, (Nov. 10, 2009).

**B.  DISPUTED FACTS**

Despite the state court's findings, Plaintiff Vu alleges the following facts of the underlying incident. On December 7, 2006, as Plaintiff Vu was driving on Roosevelt Boulevard in Philadelphia, Defendant Kegel was tailgating behind Plaintiff's car with his high beams on. (Compl. ¶¶ 36-37.) Defendant Kegel pulled his car alongside Plaintiff and began yelling racial epitaphs at him. (Id.) At the next intersection Defendant Kegel stopped his car in the middle of the road, partially blocking Plaintiff Vu from moving. Defendant Kegel then approached Plaintiff

Vu brandishing a gun, which he used to smash Plaintiff's driver-side window. (Compl. ¶ 38.) In trying to get away from Defendant Kegel, the right side of Plaintiff's car bumped the side of Kegel's car. (Id.) Plaintiff claims to have not reported the incident to the police because "as an Asian of Vietnamese descent Plaintiff had many unpleasant encounters with racist police." (Compl. ¶¶ 39-40.)

In his Complaint, Plaintiff Vu alleges that Defendant Kegel filed false police reports, lied to detectives, filed false affidavits, and testified falsely at Plaintiff's preliminary hearing and trial (Compl. ¶ 43.). Plaintiff also alleges that Defendant James J. Miles, an officer with the Philadelphia Police Department, signed Plaintiff's arrest warrant, without probable cause, based on perjured statements by Defendant Kegel and Kegel's foster son, Defendant Corey Anthony Mattes. (Compl. ¶ 46.) Plaintiff further alleges that Defendant ADA Connelly, the Assistant District Attorney working on Plaintiff's hearings, had knowledge that Defendants Kegel and Mattes had committed perjury, but did not correct the perjurious statements because Kegel and Mattes are family members of Defendant ADA Lynch. (Compl. ¶ 51.)

Plaintiff argues that the alleged use of false and fabricated materials in his arrest and criminal proceedings prevented him from having a fair and impartial trial. (Compl. ¶ 58.) Specifically, Plaintiff Vu alleges that the trial judge, Defendant Judge Byrd, had full knowledge that the testimony offered against Plaintiff Vu was perjurious, but found Plaintiff guilty and denied his petitions and post-trial motions to protect family members of Defendant ADA Lynch. (Compl. ¶¶ 58-61.) Plaintiff Vu also alleges that Defendant Judge Byrd colluded with other Defendants to alter the Notes of Testimony to deprive Plaintiff a meaningful opportunity to appeal and to deprive him of his rights to equal protection, due process, and fair trial as guaranteed under the United States Constitution.  (Compl. ¶¶ 64-84.) Finally, Plaintiff alleges that Defendants Donna M. Snyder, Disciplinary Counsel, and John Doe, unidentified Disciplinary Counsel, deprived him of his equal protection rights when they did not pursue disciplinary action

against the DA and Judicial Defendants involved in Plaintiff Vu's underlying criminal prosecution. (Compl. ¶ 83.)

Contrary to Plaintiff Vu's allegations, the trial and appellate courts reported the following facts:

> On December 6, 2007, at approximately 8:30 p.m., complainant Jason Kegel and his son Corey Mattes were driving northbound on Roosevelt Boulevard with [Plaintiff Vu] closely following with his high beams illuminated. At the intersection of Roosevelt Boulevard and Ninth Street complainant exited his vehicle, confronted [Plaintiff Vu] and told him to "turn his high beams off and stop riding my ass." Complainant then got back into his vehicle and continued northbound on Roosevelt Boulevard. However, [Plaintiff Vu] continued to follow complainant in the manner described above. Several blocks further, at the intersection of Roosevelt Boulevard and Mascher Avenue, complainant arrived at a red traffic light and [Plaintiff Vu] pulled up behind him and bumped his vehicle. As complainant exited his vehicle to inspect the damage, [Plaintiff Vu] reversed his vehicle, turned in complainant's direction and sped directly toward him. Complainant managed to escape, returned to his vehicle and took evasive actions to avoid further collision with [Plaintiff Vu]. [Plaintiff Vu] passed complainant, made a left-hand turn and drove onto the median toward complainant. Complainant again exited his vehicle and ran toward [Plaintiff Vu's] vehicle, but was not struck. [Plaintiff Vu] started toward complainant again and this time [Plaintiff Vu's] vehicle struck complainant's left leg. Complainant landed next to [Plaintiff Vu's] driver-side window, then kicked and broke [Plaintiff Vu's] window. [Plaintiff Vu] again directed his vehicle towards complainant, but collided with complainant's vehicle broadside, jamming the front driver-side door. Complainant and his son exited the vehicle from the front passenger side door at which point [Plaintiff Vu] drove off. Complainant recorded [Plaintiff Vu's] license plate number and later called the police. Thereafter, following an investigation of the incident, [Plaintiff Vu] was arrested.

Commonwealth v. Vu, CP-51-CR-0009321-2007, at 2-3 (citations omitted); Commonwealth v. Vu, 2307 EDA 2008, at 1-2.

## II.  LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a

claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer 468 U.S. 183 (1984); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of a motion to dismiss, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007). Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). There the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to defeat a Rule 12(b)(6) motion to dismiss. Ashcroft, 129 S. Ct. at 1949. In evaluating whether a Plaintiff has met the pleading requirements, a district court must identify "the 'nub' of the . . . complaint — the well-pleaded, nonconclusory factual allegation[s]." Id. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at 1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion to dismiss. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

### III. DISCUSSION

In the matter before this Court, Plaintiff Vu fails to state a claim against upon which relief can be granted pursuant to the Federal Rules of Civil Procedure, the applicable doctrines of immunity, and principles of *respondeat superior*. Plaintiff Vu also lacks standing to bring a Section 1983 civil rights claim on behalf of his aunt, Plaintiff Nguyen. Upon consideration of the fully briefed Motions to Dismiss filed by Defendants, this Court concludes that the pending Motions be granted.

### A.   PLAINTIFF MAY NOT CHALLENGE THE VALIDITY OF HIS UNDERLYING CONVICTION, WHICH HAS NOT BEEN REVERSED OR OTHERWISE CALLED INTO QUESTION.

It is well established law that a convicted criminal defendant cannot bring a federal rights suit for monetary relief arising out of an allegedly unlawful criminal prosecution unless the underlying criminal conviction had been reversed or otherwise called into question. Heck v. Humphrey, 512 U.S. 477 (1994). The Heck Court held that,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

7

512 U.S. at 486-87. Thus, an essential element of a civil rights claim of this type is that the underlying criminal case must have been terminated in favor of the civil rights claimant. See Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000) (citing Heck, 512 U.S. at 484); see also Muhammad v. Close, 540 U.S. 749, 751 (2004); Edwards v. Balistok, 520 U.S. 641, 645-47 (1997).

In Heck, the plaintiff was convicted in Indiana state court of voluntary manslaughter. While the appeal from his conviction was pending, that plaintiff filed a § 1983 lawsuit alleging that the prosecutor and police "knowingly destroyed [evidence] which was exculpatory in nature and could have proved [petitioner's] innocence." Heck, 512 U.S. at 479 (citations omitted). In dismissing Heck's claim, the Court noted that a § 1983 civil tort action is not an appropriate mechanism for challenging the validity of an outstanding criminal judgment. Id. at 486.

Similar to the plaintiff in Heck, Plaintiff Vu complains that his underlying conviction and sentence resulted from alleged unlawful conduct by defendants during his criminal trial and appeal. Were this Court to rule in favor of Plaintiff Vu, it would undoubtedly challenge and undermine the validity of his underlying conviction. Because Plaintiff Vu's conviction has been neither reversed nor invalidated by any means identified in Heck, Plaintiffs' § 1983 claims are barred and must be dismissed.

**B.    PLAINTIFF VU'S CLAIMS MUST BE DISMISSED PURSUANT TO THE APPLICABLE DOCTRINES OF IMMUNITY.**

**1. Absolute Judicial Immunity**

All state entities are entitled to immunity under the Eleventh Amendment unless that right is waived. See Laskaris v. Thornburgh, 661 F. 2d 23, 25-26 (3rd Cir. 1981). Because Pennsylvania has not waived its right to immunity in the instant suit, its courts, agencies, and officers acting in official capacity are entitled to sovereign and Eleventh Amendment immunity. As such, Plaintiffs cannot maintain any claim against Judicial Defendants acting in their official capacity.

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 PA. CONS. STAT. § 2310. See also 42 PA. CONS. STAT. § 8521. The term "Commonwealth government" includes "the courts and other officers or agencies of the unified judicial system . . . ." 42 PA. CONS. STAT. § 102. The Third Circuit Court of Appeals has held that Pennsylvania's Court entities are Commonwealth entities entitled to Eleventh Amendment immunity. Benn v. First Judicial Dist., 426 F. 3d 233 (3d Cir. 2005) (Judicial District is a state entity entitled to Eleventh Amendment immunity). Moreover, a claim brought against a state official, acting in his official capacity, constitutes a suit against the state. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Any claims for damages against Superior Court Judges Musmanno, Kelly, McEwen and Philadelphia Court of Common Pleas Judges DiBona and Byrd are wholly barred by the doctrine of judicial immunity. Likewise, the Superior Court Prothonotary is an officer of the Superior Court. See Superior Court I.O.P § 54.2; Pa. R. App. P. 3502. Thus, the court entities where the Judicial Defendants sit and where Defendants Bramblett, O'Conner, and Fasey are employed are immune from liability under § 1983. For the same reason, the Office of Disciplinary Counsel, which employs Defendants Killion, Snyder, and Doe, is an arm of the State. See MCI Telecom. Comp. v. Bell-Atlantic, 271 F. 3d 491, 503-04 (3rd Cir. 2001) (stating that "immunity extends to state agencies and departments"). As a result, Plaintiff is barred from asserting a § 1983 claim against the Judicial Defendants.

In addition to Eleventh Amendment immunity, a claim under Section 1983 must allege that a "person" committed a violation. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (2006).

A "person" under the meaning of Section 1983 does not include States or state officials acting in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58, 63 (1989). When a state official is sued in his official capacity, "it is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." Hafer v. Melo, 502 U.S. 21, 26 (1991).

The Unified Judicial System of Pennsylvania, a state entity, includes The Superior Court of Pennsylvania, the Philadelphia County Court of Common Pleas, and the Office of Disciplinary Counsel. See Callahan v. City of Philadelphia, et al., 207 F. 3d 668, 672 (3d. Cir. 2000). Agents of this state entity, are not "persons" who can be sued under Section 1983. Therefore, Plaintiffs cannot maintain their claims against the Judicial Defendants acting in their official capacity.

### 2. Quasi-Judicial Immunity

Judicial immunity is not limited to judges; quasi-judicial immunity is available to those who "perform functions closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985). In addition, personnel who act on behalf of a judicial official are entitled to quasi-judicial immunity for these acts. Gallas v. Supreme Court of Pennsylvania, 211 F. 3d 760, 772-73 (3d Cir. 2000). Likewise, prothonotaries, who act as an extension of the court, are entitled to immunity. See Pawlak v. Nix, 1996 WL 560360, at * 8 (E.D.Pa. Sept. 30, 1996) (holding that the Pennsylvania Supreme Court Prothonotary and Deputy Prothonotary are entitled to quasi-judicial immunity).

Here, Plaintiffs' allegations against Defendant Deputy Prothonotary O'Connor relate to functions closely associated with an integral function of the judicial process. Plaintiffs argue that, during Plaintiff Vu's appeal, Defendant O'Connor failed to provide Plaintiff Vu with a trial

exhibit from the lower court. (Compl. ¶¶ 80-81.) Managing the appellate record, however, is an integral function of the judicial process that the prothonotary provides as part of his official duties. Because Defendant O'Conner was acting within the scope of his duties as the Pennsylvania Supreme Court Deputy Prothonotary, he is entitled to the protection of quasi-judicial immunity for these acts. As such, Plaintiffs have failed to state a claim upon which relief can be granted as to their claim against Defendant O'Connor.

Defendants Snyder and Doe are similarly entitled to absolute immunity because each of the allegations against them is directly related to quasi-judicial functions they performed as prosecuting attorneys for the Disciplinary Board of the Pennsylvania Supreme Court. These Defendants' determination of whether to initiate disciplinary action was based upon sufficient evidence disclosed through investigation and the State's prosecution of Plaintiff Vu. Plaintiff Vu's claims against Defendants Snyder and Doe are aimed at precisely the judicial role of a prosecutor that absolute immunity is intended to protect. The functions of Defendants Snyder and Doe constituted discretionary conduct of a quasi-judicial and prosecutorial nature for which they have absolute immunity. Thus, Plaintiff Vu's request for relief against Defendants Snyder and Doe must fail as a matter of law.

### 3. Absolute Prosecutorial Immunity

All federal constitutional claims against the DA Defendants must be dismissed because absolute prosecutorial immunity protects the DA Defendants from liability. The Supreme Court has held that "in initiating prosecutions and presenting the State's case, the prosecutor is immune from a civil suit for damages under [Section] 1983." Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). It is unquestionable that prosecutors are absolutely immune from Section 1983 claims for acts "intimately associated with the judicial phase of the criminal process." Id.; see also Van de Kamp v. Goldstein, 555 U.S. 335, 342-43 (2009). Once a prosecutor has decided to seek an indictment, all actions taken by the prosecutor in anticipation of judicial proceedings or in his advocacy role for the State, are immune from liability. Buckley v. Fitzsimmons, 509 U.S. 259,

273 (1993). Thus, absolute immunity extends to a prosecutor's conduct during all stages of criminal proceedings, including appellate and post-conviction proceedings where the prosecutor is acting as an advocate for the State.

Prosecutorial immunity applies even when the prosecutor acted willfully, maliciously, or in bad faith. See Imbler, 424 U.S. at 428-29; see also Ernst v. Child & Youth Servs. of Chester County, 108 F. 3d 486, 503 (3d Cir. 1997). The Eastern District of Pennsylvania recently applied the doctrine of absolute prosecutorial immunity in dismissing allegations of prosecutorial misconduct, racial discrimination, conspiracy, and constitutional violations brought against the District Attorney. Locke v. Caldwell, 2008 U.S. Dist. LEXIS 39798, Civ. A. 07-2272, *5-6 (E.D. Pa May 14, 2008); see also Byrd v. Parris, 1999 U.S. Dist. LEXIS 15957, Civ. A. No. 99-769, *11-12 (E.D. Pa. Oct. 15, 1999) (holding that absolute prosecutorial immunity bars civil rights claims against the District Attorney's Office for alleged misconduct during the appellate process). Similar to that case, Plaintiff Vu alleges prosecutorial misconduct by the DA Defendants in their handling of his criminal trial and appeal. (Compl. ¶ 99.) Plaintiff Vu does not allege that the DA Defendants acted outside the scope of their prosecutorial or advocacy roles. Because each of Plaintiff Vu's allegations against the DA Defendants is based on actions taken by them pursuant to the performance of their prosecutorial duties, the DA Defendants are immune from any liability for claims against them in the instant suit.

## C.   PLAINTIFF VU'S SECTION 1983 ACTION CANNOT BE BASED UPON REPONDEAT SUPERIOR.

Liability in a Section 1983 civil rights action cannot be predicated upon *respondeat superior*. Monell, et al. v. Dept. of Social Servs. of the City of New York, et al., 436 U.S. 658 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F. 2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976). Liability

under § 1983 cannot be imposed vicariously or under traditional grounds of *respondeat superior*. Ressler v. Sheipe, 505 F.Supp 155, 156 (E.D. Pa. 1981). The allegations must be sufficiently specific to identify the particular conduct of a defendant alleged to have violated the plaintiff's rights. Ross v. Megan, 638 F. 2d 646, 650 (3d Cir. 1981) Furthermore, liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77 (1976).

Plaintiff Vu does not allege any facts that Defendants DA Williams, DA Abraham, or ADA Ehrlich had any form of personal knowledge or in any way acquiesced in any of the alleged wrongs about which Plaintiff Vu complains.  Thus, Plaintiffs' claims against these Defendants cannot stand.

Plaintiff Vu asserts that Defendant President Judge Dembe, as the supervisor to Defendant Judge Byrd, knew that Judge Byrd "did not reproduce [an exhibit] . . . and did not certify the exhibit to the Superior Court to deprive Plaintiff a chance for meaningful appeal." (Compl. ¶ 79.) Plaintiff has failed to allege any harm to him done by Defendant President Judge Dembe, except in her capacity as Defendant Judge Byrd's supervisor. Liability against Defendant Dembe cannot be based on her supervisory capacity alone.  Therefore, Plaintiff's claim against her must fail.

Plaintiff Vu further alleges that Defendant Killion, as the Chief Disciplinary Counsel, is the supervisor of Defendants Snyder and Doe. (Compl. ¶ 84.) Specifically, Plaintiff Vu alleges that Defendant Killion "failed to establish adequate training, supervision, and discipline policies concerning employees." (Id.) Because there is no supervisory liability under § 1983, Plaintiff has failed to allege any harm done to him by Defendant Killion other than those based on Defendant's supervisory role alone. Plaintiff Vu also avers that Defendant Fasy, the supervisor of Defendant Taylor, "failed to establish adequate training, supervision and discipline policies." (Compl. ¶ 65.) Similar to Defendant Killion, Plaintiff has failed to allege any individual harm done by Defendant

Fasy upon which a claim for relief may be based. Consequently, Plaintiff Vu's claims against Defendants Killion and Fasy must be dismissed.

> **D.  PLAINTIFF VU LACKS STANDING TO BRING A DERIVTIVE SECTION 1983 CLAIM ON BEHALF OF HIS AUNT, PLAINTIFF NGUYEN.**

Plaintiffs allege that Defendants conspired and colluded to deprive Plaintiff Nguyen of her "critical supports," which they allude are provided by her nephew, Plaintiff Vu. Plaintiff Vu signed his Complaint: "Nguyen Vu, Pro se for himself and for Plaintiff Thanh Thi Nguyen." (Compl. ¶ 30.) Thus, Moving Defendants rightly note that Plaintiff Vu brought this action on behalf of himself and as a derivative claim on his behalf of Thanh Thi Nguyen.

A person cannot use as a predicate to standing an injury for which he does not share. See Alee v. Medrano, 416 U.S. 802, 829-30 (1970). Plaintiff Vu has failed to state a claim with regard to his aunt's allegations and has failed to demonstrate either the constitutional or prudential standing requirements to establish the § 1983 claims he brings on behalf of his aunt. Therefore, Plaintiff Vu's derivative claims on behalf of his aunt must be dismissed for lack of standing.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss are granted. An appropriate Order follows.

**BY THE COURT**:

**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**